UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

RAYMOND CUADRADO,

                                    Plaintiff,

                                                                05 Civ. 10706 (PKC)

                    -against-

                                                                MEMORANDUM
                                                                AND ORDER


CITY OF NEW YORK, et al.,

                                    Defendants.

---------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

            Plaintiff sues two correctional officers and a captain, pursuant to 42 U.S.C.

§ 1983, alleging that they subjected him to excessive force and were deliberately indifferent to

his medical needs while he was a pretrial detainee at Rikers Island.   Because plaintiff was a pre-

trial detainee and not confined pursuant to a judgment of conviction, I construe his claims as as-

serting a violation of the Fourteenth Amendment.   Discovery in this action is now complete and

the officers and captain now move for summary judgment.   For the reasons outlined below, the

motion is granted.

The October 7, 2005 Incident

            The following facts are taken from plaintiff's sworn deposition testimony.   I con-

strue all reasonable inferences in plaintiff's favor.

            On October 7, 2005, Raymond Cuadrado was held at Rikers Island in a portion of

the facility designated as "G.M.D.C." (Dep. 60)   In the morning hours, he learned that his wife

was on her way to visit him. (Dep. 70)   Cuadrado reports that he had endeavored to ascertain

whether his wife had arrived and that he was given incorrect information.  (Dep. 74-76)   When

he entered the visitors' area he observed his wife crying and reporting that she had been kept

waiting for several hours. (Dep. 82)  "The officer came while I was talking to my wife and he heard me 'why didn't you have these fucking niggers call my house [meaning his housing unit]?' And he [the officer] said, 'Who the fuck you calling a nigger?'  And he started pushing me and I asked Officer Catuogno that I wanted to speak to a captain . . . ." (Dep. 89-90)  Captain Woodard arrived. (Dep. 90, 93)  The Captain listened to Cuardrado for about a minute. (Dep. 104)  The Captain said "we'll talk in the sally port" and Cuadrado was instructed to exit through the sally port doors and go to a room on the other side of the door where they would talk.  (Dep. 92, 95, 104)  Cuadrado, before passing through the sally port doors, turned around—"bent around" — and started talking to the Captain again. (Dep. 95)  "[A]nd then all sudden [an] officer from behind grab[s] me and slams me on the floor with Officer Catuogno." (Dep. 95, 102)

Cuadrado states that he had one arm under his body and one arm in the air and the officers were trying to get his arm from under his body.  Captain Woodard told Cuadrado to "[l]et them cuff you." (Dep. 98)  He said he could not move. (Dep. 98)  Officer Pollio, according to Cuadrado, then "came through the door and I guess seen what was going on, what was transpiring and punch me in the side of my temple and then they cuffed me." (Dep. 98)  Officer Catuogno and the officer who had pushed him through the door were on his back. (Dep. 110-11)  According to Cuadrado, Officer Pollio tried to slam his head on the floor but that "he didn't get a chance to." (Dep.  112)  He says he strained his neck in the process. (Dep. 112)  Cuadrado testified that he "was laughing" during the incident because he "knew it would bother him more if [he] laugh[ed]." (Dep. 118-19)  At his deposition, Cuardrado was asked about an allegation in the complaint that he had been kicked.  He acknowledged that he did not know who had done so, stating that "it never was like a major injury or nothing, so I left it alone." (Dep. 114-15)

At Captain Woodard's instructions, the officers took Cuadrado out of the area and sat him down to await an escort to the "intake" area. (Dep. 112-13)  He arrived at intake about five or ten minutes later. (Dep. 119-20)  Upon arrival at intake, he started complaining of injury and requested medical attention. (Dep. 113)  Captain Woodard told him to wait until certain paperwork was finished at which point he would receive medical attention. (Dep. 113-14) He said "okay" (Dep. 120)  He was complaining about his neck and back hurting.  (Dep. 126)  He was taken to Elmhurst Hospital. (Dep. 129)  X-rays and an MRI were taken. (Dep. 129, 132)  He was given Ibuprofen or Naprosyn and Bengay.  (Dep. 134)

Cuadrado had no prior incidents with Officers Catuogno or Pollio. (Dep. 99)

Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 57(c), Fed. R. Civ. P..  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief.  A fact is material if it "might affect the outcome of the suit under the governing law . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law.  Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere alle-

gations or denials" of the facts asserted by the movant.   Rule 57(e), Fed. R. Civ. P.  In raising a

triable issue of fact, the nonmovant carries only "a limited burden of production," but neverthe-

less "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come

forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd.

of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. United States Lines, Inc.,

7 F.3d 1067, 1072 (2d Cir. 1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could re-

turn a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  The Court must "view the

evidence in the light most favorable to the non-moving party and draw all reasonable inferences

in its favor, and may grant summary judgment only when no reasonable trier of fact could find in

favor of the nonmoving party."  Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (quotations and

citations omitted); accord Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587-88 (1986).  In reviewing a motion for summary judgment, the court must scrutinize the re-

cord, and grant or deny summary judgment as the record warrants.  See Rule 56(c), Fed. R. Civ.

P. In the absence of any disputed material fact, summary judgment is appropriate.  Id.

The defendants have served the pro se plaintiff with the notice explaining the

manner in which a party may oppose summary judgment, as required by Local Rule 56.2.  I am

mindful of the latitude afforded to a pro se party opposing a summary judgment motion.  See

Forsyth, 409 F.3d at 570 ("special solicitude" owed to pro se litigants opposing summary judg-

ment); Shabtai v. U.S. Dep't of Educ., 2003 WL 21983025, at *5 (S.D.N.Y. Aug. 20, 2003)(ob-

ligation to construe leniently pro se opposition papers on a summary judgment motion).

However, a party's pro se status does not alter the obligation placed upon the party opposing

summary judgment to come forward with evidence demonstrating that there is a genuine dispute

regarding material fact. <u>Miller v. New York City Health & Hosp. Corp.</u>, 2004 WL 1907310, at *9 (S.D.N.Y. Aug. 25, 2004).

<u>Discussion</u>

   To prove a claim under section 1983, the plaintiff must establish that he was deprived of a right protected by the U.S. Constitution or federal law by a person acting under color of state law. 42 U.S.C. § 1983.  Here, it is undisputed that, in connection with the October 7, 2005 incident, the Rikers Island prison guards were acting under color of state law.  The constitutionally protected rights at issue are the right to be free from excessive force and the right to be free from deliberate indifference to medical needs.

   A. <u>Excessive Force</u>

  "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)(citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 535-539 (1979)). <u>See also Iqbal v. Hasty</u>, 490 F.3d 143, 168 (2d Cir. 2007).  Where an Eighth Amendment claim is asserted by a convicted person, the standard set forth in <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992), governs an inmate's claim of excessive force or abuse by a prison guard in contexts other than prison disturbances.  The Second Circuit has held that the <u>Hudson</u> standard also applies to claims by pretrial detainees. <u>United States v. Walsh</u>, 194 F.3d 37, 47-48 (2d Cir. 1999).

   Under <u>Hudson</u>, a claim of excessive force may be established even if the victim does not suffer "serious" or "significant" injury, provided that the amount of force used is more than "<u>de</u> <u>minimis</u>," or involves force that is "repugnant to the conscience of mankind," <u>See</u> <u>Walsh</u>, 194 F.3d at 48 (quoting <u>Hudson</u>, 503 U.S. at 7-10).  However, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action . . . ." <u>Hudson</u>, 503 U.S. at 9 (cita-

tion omitted).  The "core judicial inquiry" is "whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S.

at 7 (citing Whitley v. Albers, 475 U.S. 312 (1986)).

 The Second Circuit reads Hudson as requiring that two elements be met. Walsh,

195 F.3d at 50.  First, a subjective requirement that the defendant have acted with a sufficiently

culpable state of mind, i.e. wantonness or maliciousness. Id.  Second, the plaintiff must show that

the deprivation, from an objective standpoint, is sufficiently serious or harmful which is satisfied

by showing that the amount of force used is not de minimis. Id.

 Here, I conclude that neither prong is satisfied. While much time is spent in the

papers explaining whether or not Cuadrado's wife was kept waiting needlessly, it is immaterial

to the claim.  Cuadrado's highly inappropriate and inflammatory verbal outburst initiated the in-

cident.  He asked for a captain and the captain appeared on the scene without delay.  He was in-

structed to move through the doors to discuss the matter further but, while still in the visitors'

area, insisted on bending his body back to continue the dialogue with the captain.  While Cuad-

rado's conduct justified his removal from the visitors' area and his restraint in cuffs, it, of course,

would not justify the use of excessive force.

 The actions taken by the officers in the presence of a superior officer were de-

signed solely to subdue the prisoner.  He was forcefully pushed through the door and shoved, or

thrown to the floor.  While Cuadrado characterizes the actions of one officer as attempting to

slam his head on the floor, he asserts that he was successful in preventing that from occurring

and, indeed, derisively laughed at the attempt.  True, he swears he was punched once in the head

but the punch was in the context of endeavoring to get him to surrender the arm that was not

available for cuffing.  While there may also have been a kick, he does not know who adminis-

tered it and there were other non-party officers in the area. (Dep. 114)  A photograph of Cuadrado taken following the incident shows an apparently healthy individual with a faint red mark on his forehead. (Castro Decl. Exh. J)  Immediately after he was subdued, he was seated to await transport to "intake".  After paperwork was processed on the incident, he received medical care at the facility and then taken to Elmhurst Hospital.

The plaintiff's wife has submitted a declaration in which she refers to "three _more_ officers" surrounding the plaintiff. (Pl. 56.1, Exh. F2 at ¶ 8)(emphasis added)  From her description, the "three more officers" did not include Captain Woodward or the officer with whom plaintiff had a verbal altercation, i.e. Catuogno.  Further, she offers no description which would permit one to know whether defendant Pollio was among the three.  According to Cuadrado, Pollio was not immediately on the scene but "came through the door and I guess he seen what was going on . . . ." (Dep. 98)

"Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights." Hudson, 503 U.S. at 9 (citation omitted).  No reasonable jury could conclude that, acting in the split-second context of a prisoner takedown, the defendants in this case acted in a wanton or malicious manner.  Thus, plaintiff's claim fails the first prong.  While the second prong presents a closer question, I also conclude that no reasonable jury could conclude that, in the context of a lawful takedown of a prisoner, the degree of force used was more than de minimis.

B.     Medical Indifference

Ordinarily, in order to establish a substantive due process violation for purposes of section 1983, a plaintiff must show that the defendant's actions taken under color of state law involved "conduct intended to injure [plaintiff] in some way unjustifiable by any government

interest [and] . . . most likely to rise to the conscience-shocking level." <u>County of Sacramento v.</u> <u>Lewis</u>, 523 U.S. 833, 849 (1998).  However, <u>Lewis</u> held that for pretrial detainees protected by the Fourteenth Amendment a lower standard of "deliberate indifference" applies to claims aris- ing from inattention to their medical needs. <u>Id</u>. at 850.  "Since it may suffice for Eighth Amend- ment liability that prison officials were deliberately indifferent to the medical needs of their pris- oners, it follows that such deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial." <u>Id</u>.

There is both an objective and subjective element to a claim of deliberate indiffer- ence upon which the plaintiff bears the burden of proof.  "Objectively the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.  Subjectively, the charged official must act with a sufficiently culpable state of mind." <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996) (in- ternal citations and quotations omitted).

Immediately, upon informing the Captain that he was injured, she advised him that he would receive medical care as soon as the intake paperwork was completed. Cuadrado testified that he saw a doctor "maybe forty five minutes to an hour later after the incident . . . ." (Dep. 16-17)  The medical records indicate that the physician's assistant saw Cuadrado at 4:50 p.m. and that he told her that the incident had taken place at 2:15 p.m. (Castro Decl. Exh. K, L) He was transported to Elmhurst Hospital where he an X-ray and medication were administered. The diagnosis of  Xun Zhong, M.D., upon discharge from the hospital, was "muscle strain." (Castro Decl. Ex. M)

Neither prong of the deliberate indifference standard is met here. There is no evidence, other than plaintiff's subjective unverifiable statements, that his claim meets the objective "sufficiently serious" threshold. Moreover, the evidence would not permit a reasonable jury to conclude that any defendant in this action was indifferent to plaintiff's medical needs; simply put, he received prompt and competent medical attention.

C.    Rule 4(m)

The plaintiff did not serve the City of New York or Officer G. Wolfe within the 120 day period provide in Rule 4(m), Fed. R. Civ. P. Process was twice returned by the Marshal Service as unexecuted as to Officer Wolfe and the fact is reflected on the docket sheet (Doc #13, 18) Plaintiff had notice of the lack of service on the City of New York in the moving defendants' brief filed November 30, 2006. Because service has not been effectuated in the year and a half that the action has been pending, defendants Wolfe and City of New York are dismissed.

CONCLUSION

The motion for summary judgment of defendants Pollio, Catuogno and Woodard is granted. Defendants City of New York and Wolfe are dismissed for failure to effectuate service within the 120 days provided in Rule 4(m). The Clerk shall enter judgment in favor of defendants.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       August 15, 2007